# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA JACKSON, Individually and on Behalf of her Minor Son, QUINN JACKSON, ) ) ) Plaintiffs, ) ) v. ) ) CITY OF McKEESPORT, JOSEPH PERO, and CANDACE TYLER, ) ) ) Defendants. ) | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Linda Jackson, Individually and on Behalf of her Minor Son, Quinn Jackson, by and through their undersigned counsel, complain against the above-named Defendants as follows:

1. Plaintiff, Linda Jackson, is an adult individual who resides at 708 Bennett Street, McKeesport, PA 15132. Linda Jackson is the mother of her minor son, Quinn Jackson, who also resides at 708 Bennett Street, McKeesport, PA 15132. At the time of the events alleged in this Complaint, Quinn Jackson was 14 years of age.

2. Defendant City of McKeesport is a local government agency with an address of 500 Fifth Avenue, McKeesport, PA 15132, which at all relevant times was acting under color of state law through the conduct of its police department, chief of police and individual officers.

3. Defendants Joseph Pero and Candace Tyler are employees of the City of McKeesport who at all times were acting under color of state law. Defendants Pero and Tyler are sued in their individual and official capacities.

4. Jurisdiction is based on 28 U.S.C. § 1331.

5. Venue is proper in this District because the events giving rise to the claims asserted herein occurred in this District.

6. On May 26, 2006, at approximately 4:00 p.m., a crowd of people, some of whom had been drinking at a party down the street, gathered on the street in front of Plaintiff's house. A father and son, who are also neighbors of Plaintiff, began arguing and a physical confrontation ensued. Plaintiff's boyfriend, Wayne Crowl, attempted to break up the fight and was punched by the son. As a witness to this altercation, Plaintiff called 911 and reported the incident.

7. Within a few minutes, 3-4 police squad cars arrived and the officers cleared the scene by directing everyone to go into their homes.

8. Approximately 5 minutes after the police squad cars left the scene, the father and son were back in the street fighting and the son brandished a brick and threatened to hit his father with it. Plaintiff's boyfriend, Wayne Crowl, again attempted to separate the men. Plaintiff again called 911.

9. In response to Plaintiff's call, McKeesport Police, White Oak Police and Pennsylvania State Troopers arrived on the scene, began making arrests and directing everyone to return to their homes.

10. Plaintiff left her front porch and grabbed her boyfriend by the arm in an attempt to direct him to her home. When he did not respond to her prompting, Plaintiff returned to her front porch to go inside, as directed by the police.

11. Before Plaintiff could open her front door, Defendant Candace Tyler of the McKeesport Police Department came onto her porch and questioned, "I thought everyone was told to get in your house!"

12. Officer Tyler then forcibly placed Plaintiff's hands behind her back, handcuffed her, and placed her under arrest. Officer Tyler then proceeded to grab Plaintiff by her hair and beat her face into the brick wall of her home. Officer Tyler also sprayed mace or pepper spray into Plaintiff's face and pushed her face repeatedly against a gliding chair on the front porch and bent her over the chair. Officer Tyler also stated, "You gonna try to fight me, you [expletive] white bitch?"

13. Plaintiff's minor son, Quinn Jackson, who had been playing basketball down the street, observed Officer Tyler beating his mother and ran onto the porch and yelled, "Stop beating my mother!" Officer Tyler responded by yelling at Quinn, "Get away from here you white trash!"

14. As Officer Tyler had Plaintiff bent over the gliding chair, Quinn yelled at Officer Tyler, "My mother has a bad back!" In response to this, Officer Tyler said, "Oh, the white bitch has a bad back?" and proceeded to punch, kick, and knee Plaintiff in her lower back and legs.

15. Officer Tyler sprayed mace or pepper spray into Quinn's face, pushed or punched him with enough force to throw him off of the porch, and ordered him onto the ground. Quinn laid face down on the sidewalk. Quinn was arrested, handcuffed and placed into a squad car.

16. When Plaintiff asked Officer Tyler where her son was, Officer Tyler responded, "I got him good, white trash!"

17. Plaintiff was taken to the McKeesport Police Station and was having difficulty seeing as a result of the mace or pepper spray. Officer Tyler pulled Plaintiff from the squad car, forced her handcuffs over her head, and repeatedly beat her face against the doors as they entered the police station.

3

18. Once inside the police station, Plaintiff could hear other officers cheering, yelling and encouraging the behavior of Officer Tyler.

19. Officer Tyler placed Plaintiff, who remained in handcuffs, into a holding cell and ordered her to kneel on a bench with her ankles crossed. Plaintiff remained in this position for approximately one hour. Plaintiff asked if she could see a doctor but her request was ignored.

20. Officer Tyler came to the holding cell and ordered Plaintiff to come to the door so that she could be given something for her eyes. Plaintiff responded, "You already did enough to my eyes." Officer Tyler then entered the cell and hit Plaintiff's face against the wall several times while calling her "white bitch" and "white trash."

21. Plaintiff asked Officer Tyler what had happened to her son, Quinn. Officer Tyler told Plaintiff that her son was being questioned about a recent murder that had occurred in the neighborhood and was being sent to Shuman Center.

22. Plaintiff's son Quinn was released from the police station after approximately ½ hour with no charges ever filed against him.

23. Plaintiff was released from custody after spending approximately 10 hours in the holding cell and charged with public intoxication and disorderly conduct.

24. Plaintiff walked home, showered, and went to the emergency room at McKeesport Hospital where she was treated for multiple cuts, contusions, abrasions and bruises on her face, head, neck, back and legs.

25. A few days following the incident, Plaintiff complained to the Chief of Police, Joseph Pero, about Officer Tyler's conduct. Chief Pero threatened and intimidated Plaintiff that if she made any false statements, the Federal Bureau of Investigation would "throw her ass in jail."

26. Officer Tyler also works at Quinn's school as a school guard and has since harassed Quinn and made remarks to Quinn such as, "I'll beat your ass just like I beat your mother's ass!" Plaintiff has since placed Quinn in cyber school.

27. Plaintiff has a prior medical history of lower back injury with surgical intervention in 2005 (L4-L5 laminectomy). On November 1, 2005, approximately six months before this incident, Plaintiff had a cervical diskectomy and fusion on three levels. She had significant problems with her neck as a result of this incident and was required to have a second surgery on July 26, 2006 because her neck was not healing properly after this incident. Plaintiff had a third surgery on her neck on February 6, 2008.

## COUNT I – 42 U.S.C. § 1983
## LINDA JACKSON v. CITY OF McKEESPORT, JOSEPH PERO, CANDACE TYLER

28. Plaintiff incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

29. Defendants City of McKeesport, Joseph Pero and Candace Tyler were acting under color of state law at all relevant times herein. The conduct of Officer Tyler constituted false arrest, unnecessary and excessive force, and otherwise violated Linda Jackson's due process and civil rights under 42 U.S.C. § 1983.

30. Defendants City of McKeesport, Joseph Pero and Candace Tyler were acting under color of state law at all relevant times herein and under an official policy or custom which caused the deprivation of Linda Jackson's due process and civil rights under 42 U.S.C. § 1983, namely, a failure to properly train in the use of force, inadequate training, and failure to supervise the conduct of the arresting officers.

5

31. Defendants City of McKeesport and Joseph Pero had personal involvement in the constitutional deprivations by participating in, having personal direction of, and knowledge of and acquiescence of the conduct of Officer Tyler.

32. As a direct and proximate result of Defendants' conduct, Linda Jackson sustained severe injuries, some of which may be permanent, including but not limited to:

    a.    deprivation of her due process and civil rights,

    b.    low back and neck pain and trauma requiring surgical intervention,

    c.    pain and numbness in her legs,

    d.    severe and multiple cuts, contusions, abrasions, bruises and swelling on her face, head, neck, back, legs, and hands, including two black eyes,

    e.    frequent headaches,

    f.    embarrassment, humiliation, anxiety, depression, and inability to engage in the pleasures of life,

    g.    medical expenses,

    h.    lost wages.

WHEREFORE, Plaintiff Linda Jackson, seeks compensatory and punitive damages against the above-named Defendants and demands judgment in excess of $75,000, plus interest, costs, expenses and counsel fees.

<u>COUNT II – 42 U.S.C. § 1985(3)</u>
<u>LINDA JACKSON v. CITY OF McKEESPORT, JOSEPH PERO and CANDACE TYLER</u>

33. Plaintiff incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

6

34. Defendants City of McKeesport, Joseph Pero and Candace Tyler were acting under color of state law at all relevant times herein. Defendants conspired to deprive Linda Jackson of her equal protection and due process rights with an invidious racial animus in violation of 42 U.S.C. § 1985(3).

35. Defendants City of McKeesport and Joseph Pero had personal involvement in the constitutional deprivations by participating in, having personal direction of, and knowledge of and acquiescence of the conduct of Officer Tyler.

36. As a direct and proximate result of Defendants' conduct, Linda Jackson sustained severe injuries, some of which may be permanent, including but not limited to:

    a. deprivation of her due process and civil rights,

    b. low back and neck pain and trauma requiring surgical intervention,

    c. pain and numbness in her legs,

    d. severe and multiple cuts, contusions, abrasions, bruises and swelling on her face, head, neck, back, legs, and hands, including two black eyes,

    e. frequent headaches,

    f. embarrassment, humiliation, anxiety, depression, and inability to engage in the pleasures of life,

    g. medical expenses,

    h. lost wages.

WHEREFORE, Plaintiff Linda Jackson, seeks compensatory and punitive damages against the above-named Defendants and demands judgment in excess of $75,000, plus interest, costs, expenses and counsel fees.

## COUNT III – 42 U.S.C. § 1983
## LINDA JACKSON, on Behalf of Her Minor Son, QUINN JACKSON
## v. CITY OF McKEESPORT, JOSEPH PERO, and CANDACE TYLER

37. Plaintiff incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

38. Defendants City of McKeesport, Joseph Pero and Candace Tyler were acting under color of state law at all relevant times herein. The conduct of Officer Tyler constituted false arrest, unnecessary and excessive force, and otherwise violated Quinn Jackson's due process and civil rights under 42 U.S.C. § 1983.

39. Defendants City of McKeesport, Joseph Pero and Candace Tyler were acting under color of state law at all relevant times herein and under an official policy or custom which caused the deprivation of Quinn Jackson's due process and civil rights under 42 U.S.C. § 1983, namely, a failure to properly train in the use of force, inadequate training, and failure to supervise the conduct of the arresting officers.

40. Officer Tyler continued to harass Quinn at his school in the days following the incident, including but not limited to making threatening remarks toward him and his mother.

41. Defendants City of McKeesport and Joseph Pero had personal involvement in the constitutional deprivations by participating in, having personal direction of, and knowledge of and acquiescence of the conduct of Officer Tyler.

42. As a direct and proximate result of Defendants' conduct, Quinn Jackson sustained severe injuries, including but not limited to:

    a. deprivation of his due process and civil rights,

    b. severe emotional trauma,

8

      b.    multiple cuts, contusions, abrasions, bruises and swelling on his face, head, and eyes,

      d.    embarrassment, humiliation, anxiety, depression, and inability to engage in the pleasures of life.

WHEREFORE, Plaintiff Linda Jackson, on Behalf of Her Minor Son, Quinn Jackson, seeks compensatory and punitive damages against the above-named Defendants and demands judgment in excess of $75,000, plus interest, costs, expenses and counsel fees.

<u>COUNT IV – 42 U.S.C. § 1985(3)</u>
<u>LINDA JACKSON, on Behalf of Her Minor Son, QUINN JACKSON</u>
<u>v. CITY OF McKEESPORT, JOSEPH PERO, and CANDACE TYLER</u>

43.    Plaintiff incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

44.    Defendants City of McKeesport, Joseph Pero and Candace Tyler were acting under color of state law at all relevant times herein. Defendants conspired to deprive Quinn Jackson of his equal protection and due process rights with an invidious racial animus in violation of 42 U.S.C. § 1985(3).

45.    Defendants City of McKeesport and Joseph Pero had personal involvement in the constitutional deprivations by participating in, having personal direction of, and knowledge of and acquiescence of the conduct of Officer Tyler.

46.    As a direct and proximate result of Defendants' conduct, Quinn Jackson sustained severe injuries, including but not limited to:

      a.    deprivation of his due process and civil rights,

      b.    severe emotional trauma,

9

    c.  multiple cuts, contusions, abrasions, bruises and swelling on his face, head, and eyes,

    d.  embarrassment, humiliation, anxiety, depression, and inability to engage in the pleasures of life.

  WHEREFORE, Plaintiff Linda Jackson, on Behalf of Her Minor Son, Quinn Jackson, seeks compensatory and punitive damages against the above-named Defendants and demands judgment in excess of $75,000, plus interest, costs, expenses and counsel fees.

            Respectfully submitted,

            */s/ Dana L. Munhall*
            Bernard D. Marcus
            Pa. I.D. # 01293
            Dana L. Munhall
            Pa. I.D. # 82583
            MARCUS & SHAPIRA LLP
            301 Grant Street
            One Oxford Centre, 35th Floor
            Pittsburgh, PA 15219
            (412) 471-3490