**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA JACKSON, Individually and on Behalf of her Minor Son, QUINN JACKSON, | ) ) ) | CIVIL DIVISION |
| Plaintiffs, | ) ) | No.:  08-0720 |
| v. | ) ) | Honorable David S. Cercone |
| CITY OF MCKEESPORT,  JOSEPH PERO, CANDACE TYLER, GLENN LYNN and DANIEL RICH, | ) ) ) ) | ELECTRONICALLY FILED |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY
JUDGMENT**</u>

**I.**     <u>**INTRODUCTION**</u>

        Plaintiff, Linda Jackson, filed the instant civil rights case on her behalf and on behalf of her

minor son, Quinn Jackson, alleging that on May 26, 2006, she was subjected to excessive use of

force and falsely arrested by the Defendants and that Quinn Jackson was falsely arrested by the

Defendants in violation of the Fourth Amendment.   She has also alleged municipal/supervisory

liability claims against the City of McKeesport and Chief Pero.    The instant Partial Motion for

Summary Judgment will address Plaintiff's and her son's false arrest claims, municipal liability

against the City, the supervisory claims against Chief Pero, the Section 1985 conspiracy claims, the

14th Amendment due process claims, Plaintiffs' claims that do not fall under Section 1983,

Plaintiffs' claims for punitive damages, the excessive use of force claim alleged by Quinn Jackson

and  improper joinder.   Summary Judgment must be entered with prejudice on the claims addressed

in this Partial Motion.

## II.   STANDARD OF REVIEW

In deciding a motion for summary judgment, this Court is governed by Rule 56(c) of the Federal Rules of Civil Procedure. The moving party bears the initial burden of identifying for the Court those portions of the record which demonstrate the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Northern Ins. Co. v. Aardvark Associates*, 942 F.2d 189. 194 (3rd Cir. 1991). An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3rd. Cir. 1990).

The non-moving party must produce more than a mere scintilla of evidence in its favor and may not simply reassert factually unsupported allegations contained in its pleadings. *Celotex*, 477 U.S. at 325; *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1020 (3rd. Cir. 1990). A factual dispute is material only if it might affect the outcome of the lawsuit under governing law. *Anderson*, 477 U.S. at 248; *Jordan v. Berman*, 792 F. Supp. 380, 382 (E.D. Pa. 1992). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. *Anderson*, 477 U.S. at 249-250. Although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence. *Big Apple BMW, Inc. v BMW of North America*, 974 F.2d 1358, 1362 (3d Cir. 1992), *cert. denied*, 113 S.Ct. 1262 (1993).

## III.   ARGUMENTS

### A.   LINDA JACKSON'S 4th AMENDMENT CLAIM MUST BE DISMISSED WITH PREJUDICE BECAUSE SHE ENTERED A GUILTY PLEA

The Third Circuit has held that "an arrest without probable cause is a constitutional violation actionable under §1983." *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). When looking to the elements of false arrest, however, the Third Circuit considers the elements of the tort in state law.

*See Gibson v. Sup. Of N.J. Dept*, 411 F.3d 427 (3d Cir. 2005) (overruled on other grounds). In Pennsylvania, "false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so." *Renk v. City of Pittsburgh*, 641 A.2d 289, 295 (Pa. 1994).

In the present case, Ms. Jackson was charged with disorderly conduct and public intoxication arising out of the events of May 26, 2006. *See, Amended Complaint, ¶24.* Ms. Jackson admits that she plead guilty to disorderly conduct. *See, Depo. Tr. of Plaintiff, pp. 101 attached to Appendix as Exhibit "G."* It is well-established that 'the doctrines of res judicata and collateral estoppel have a place in section 1983 litigation.'" *Kossler v. Crisanti*, 2005 U.S. Dist. LEXIS 15584, at *16 (W.D. Pa. 2005) (quoting *Switlik v. Hardwicke Co., Inc.*, 651 F.2d 852, 858 (3d Cir. 1981)). "The guiding principle is that 'an action under section 1983 [cannot] be maintained on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings if a judgment in favor of the plaintiff in the civil case would imply that the conviction was invalid." *Kossler*, 2005 U.S. Dist. LEXIS 15584, at *16-17 (quoting *Nelson v. Jashurek*, 109 F.3d 142, 144 (3d Cir. 1997)). Thus, "a conviction of an offense for which a plaintiff was arrested generally bars a § 1983 false arrest claim." *Jackson v. Mills*, 1997 U.S. Dist. LEXIS 18017, at *4 n.1 (E.D. Pa. 1997) (citing *Heck*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383; *Smithart v. Towery*, 79 F.3d 951 (9th Cir. 1996); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)). See also *Ehly v. City of Philadelphia*, 2004 U.S. Dist. LEXIS 23089, at *10-11 (W.D. Pa. 2004) (the court dismissed the plaintiff's unlawful arrest, malicious prosecution, and false arrest claims because "admission to the charge of simple assault, much like a guilty plea, conclusively establishes the existence of probable cause for arrest and prosecution."). *See, Shilling v. Brush,* 2007 U.S. Dist. LEXIS 4330 *36-38 (M.D. Pa. January 2007). As Ms. Jackson pled guilty to disorderly conduct,

she cannot allege that she was falsely arrested, and her Fourth Amendment false arrest claim must be dismissed with prejudice.

It is anticipated that Ms. Jackson will argue that the Magistrate dismissed the charge for public intoxication, and therefore, her false arrest claim remains viable despite her guilty plea on the disorderly conduct charge; however, there need not even have "been probable cause supporting charges for every offense for which an officer arrested a plaintiff for the arresting officer to defeat a claim of false arrest." *See, Wright v. City of Philadelphia*, 409 F.3d 595, 602-04 (3d Cir. 2005). Accordingly, her Fourth Amendment false arrest claim fails regardless of the dismissal of her public intoxication charge.

Moreover, probable cause did exist for the public intoxication charge against Ms. Jackson. To establish public drunkenness under 18 Pa. C.S.A §55505, the following must be established:

> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, except those taken pursuant to the lawful order of a practitioner, as defined in the Controlled Substance, Drug, Device and Cosmetic Act, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

To establish a claim for false arrest, a plaintiff must prove the absence of probable cause. *See, Gagliardi v. Fisher,* 2007 U.S. Dist. LEXIS 18627 * 49. The Fourth Amendment prohibits an officer from arresting a citizen except upon probable cause. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3rd Cir. 1995). Probable cause is defined in terms of facts and circumstances known to the arresting officer, sufficient to warrant a prudent police officer in believing that the suspect had committed or was committing an offense. *Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3rd Cir. 1997). While probable cause to arrest requires more than mere suspicion, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. *Orsatti*, 71 F.3d at

482-83. Rather, probable cause exists if there is a "fair probability" that the person charged committed the crime at issue. *Wilson v. Russo*, 212 F.3d 781, 789 (3rd Cir. 2000). If, at the moment the arrest was made, the facts and circumstances within the Defendant police officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the Plaintiff had violated the law, probable cause is present. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 789 (3rd Cir. 2000).

Once a police officer possesses eyewitness statements or circumstantial evidence sufficient to give rise to a reasonable belief that the Plaintiff had violated the law, the officer is not required to conduct an independent investigation to corroborate the information he has received. An officer is not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already exists. *Merkle*, 211 F.3d at 790, N.8; *Feldman v. CCAC*, 85 Fed. Appx. 821, 825 (3rd Cir. 2004). The mere fact that a police investigation could have been more thorough does not vitiate probable cause. *Mitchell v. Obenski*, 134 Fed. Appx. 548, 551 (3rd Cir. 2005). The conduct alleged to constitute a deprivation of constitutional rights must have been unreasonable under the circumstances and facts known by the police at the time the conduct occurred. Otherwise, every time charges which are filed against an arrestee are dismissed or dropped, the police officers involved would be liable for false arrest and/or violation of the arrestee's civil rights. This reality is recognized in applicable case law which hold that a cause of action under 42 U.S.C. §1983 accrues at the time the alleged misconduct occurred, not on the date which subsequent charges are dropped or dismissed. *McCafferty v. City of Beaver Falls*, 647 F.Supp. 1570 (W.D. Pa. 1996); *Sandutch v. Muroski*, 684 F.2d 252 (3rd Cir. 1982).

In this case, probable cause did exist for Ms. Jackson's arrest for public intoxication. Ms. Jackson admitted that she drank about a half of a can of beer. *See, Depo. Tr. of Plaintiff, p. 20*

*attached to Appendix as Exhibit "G."* Her boyfriend, Wayne Crowl testified that she had been drinking that day and he knew that she had at least one beer. *See, Depo Tr. of Wayne Crowl, p.* 23 *attached to Appendix as Exhibit "B."* Additionally, the citation for public intoxication included all of the elements: "actor was involved in a fight, intox and a danger to herself and others." *See, Citation P5949030 attached to Appendix as Exhibit "F."* Her citation for disorderly conduct also indicated that she was highly intoxicated. *See, Citation P5949033-6 attached to Appendix as Exhibit "E."* Additionally, a Subject Resistance Report was created following Officer Tyler's arrest of her. *See, Subject Resistance Report attached to Appendix as Exhibit "H."* Moreover, it was never determined that probable cause did not exist for the public intoxication charge and Plaintiff cannot establish any evidence that Officer Tyler did not have probable cause to charge her with public intoxication. In fact, Plaintiff admitted are her deposition that the Magistrate left it up to the defendants to decide which charge that they wanted to drop. All of the defendants chose to drop the public intoxication charge, but she did not recall the reasoning behind the decision. *See, Depo. Tr. of Plaintiff, pp. 101-102 attached to Appendix as Exhibit "G."* Accordingly, Defendants are entitled to summary judgment on Ms. Jackson's false arrest claim because her guilty plea to disorderly conduct establishes that probable cause existed to support her arrest. See *Frederick*, 2006 U.S. Dist. LEXIS at *30; *Imbergamo*, 392 F. Supp. 2d at 696. Furthermore, Plaintiff cannot come forth with any evidence to refute that probable cause existed for either charge.

### B. DEFENDANTS HAD PROBABLE CAUSE TO ARREST QUINN JACKSON FOR DISORDERLY CONDUCT.

Ms. Jackson alleges that Quinn Jackson was falsely arrested for disorderly conduct and that he was found not guilty. *See, Amended Complaint, ¶22-23.* However, probable cause did exist for the arrest and the charges were dismissed because no witness for the state appeared at the hearing.

In order to be convicted of the charge of 18 Pa.C.S.A §5503 for disorderly conduct, the following must be established:

> OFFENSE DEFINED -- A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> 1.    engages in fighting or threatening, or in violent or tumultuous behavior;
>
> 2.    makes unreasonable noise;
>
> 3.    uses obscene language, or makes an obscene gesture; or
>
> 4.    creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

In this case, Wayne Crowl, Ms. Jackson's live in boyfriend, testified that the street was mass chaos when the police were there. *See, Depo. Tr. of Wayne Crowl, p. 32 attached to Appendix as Exhibit "B."* He also admitted that people were disturbed by the fight and that the police were engaging in crowd control. *See, Depo. Tr. of Wayne Crowl, p. 45 and 49 attached to Appendix as Exhibit "B."* In fact, Nathan Brown, a resident and witness to some events, classified the scene as a riot. *See, Depo. Tr. of Nathan Brown, p. 14-24; 30-35 attached to Appendix as Exhibit "A."* Importantly, Brown testified that she saw Quinn Jackson running toward the Jackson residence and that he was yelling "watch my mom's back, watch my mom's back, she's got a bad back." Then, Quinn Jackson came into Jackson's yard, and up on the porch. Brown saw an officer come toward Quinn Jackson and assumed that when Quinn came onto the porch that the "officer felt threatened and tackled him or took him down to try to keep him from doing something that he thought that he was going to do." *See, Depo. Tr. of Nathan Brown, pp. 45-46 attached to Appendix as Exhibit "A.".* Paul Fogle, another neighbor and witness to some of the events, testified that he saw Quinn run down the street toward the Jackson house screaming at the top of his lungs for the officer to let his mother go and that she had a bad back. Quinn went up on the Jackson porch where his mother's arrest was being effectuated and kept screaming at the top of his lungs. The officer told him to shut

up or he was going to jail and he responded that he did not care and kept screaming at the top of his lungs. *See, Depo. Tr. of Paul Fogle, p. 54-55 attached to Appendix as Exhibit "D."* At the very least, Quinn was "making unreasonable noise" and that alone suffices as probable cause for a disorderly conduct charge. However, his screaming and insolent behavior also could have been interpreted to have been engaging in tumultuous behavior and creating a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. Clearly, probable cause existed to arrest Quinn Jackson for disorderly conduct, and therefore, the Fourth Amendment claim for false arrest must be dismissed with prejudice.

### C. THE CITY OF MCKEESPORT IS ENTITLED TO SUMMARY JUDGMENT AS THERE IS NO EVIDENCE OF ANY PRIOR OCCURRENCES THAT COULD POSSIBLY GIVE RISE TO MUNICIPAL LIABILITY.

Plaintiffs have alleged in their Amended Complaint that Chief Pero, Officer Tyler, and Lt. Lynn violated Plaintiff Linda Jackson's civil rights pursuant to an official policy or custom, "namely, a failure to properly train in the use of force, inadequate training, and failure to supervise the conduct of the arresting officers." *See, Amended Complaint, ¶32.* It is additionally alleged that Chief Pero, Officer Tyler and Officer Rich deprived Plaintiff Quinn Jackson of his civil rights pursuant to the same unlawful policy or custom. *See, Amended Complaint, ¶41.* Plaintiffs also claim that prior similar events establish a pattern of violative conduct.

However, despite Plaintiffs' dogged pursuit of evidence of prior unlawful arrests and/or prior occurrences of the use of excessive force on arrestees or detainees, the record is devoid of any such evidence in this case. Chief Pero has succinctly summarized the dearth of prior incidents in his Declaration supporting Defendants' Motion for Summary Judgment. *See, Declaration of Pero attached to Appendix as Exhibit "J."* Plaintiffs will not be able to contradict Chief Pero's testimony. A municipality can be held liable under §1983 only if a Plaintiffs show that the actions that were

violative of his civil rights were the result of a policy, ordinance or custom of the local government or were committed by an official high enough in government so that the actions can fairly be said to represent a government decision. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiffs must provide evidence that the government unit itself supported a violation of plaintiff's constitutional rights. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3rd Cir. 1990); *Monell* 436 U.S. at 695. The United States Supreme Court in *Monell* held that a civil rights complaint against a municipality or its agency must allege:

> 1. The existence of a custom or a policy of the municipality, which is of such long standing to have the force of law; and
>
> 2. That one of the municipality's employees violated the plaintiff's Civil Rights while acting pursuant to this custom or policy.

*Id*. Municipalities do not cause constitutional deprivations merely by hiring alleged tortfeasors. Rather, the complained of injury must be causally linked to a custom or policy of a municipality pursuant to which an employee was acting. *Beck v. City of Pittsburgh,* 89 F.3d 966, 972 (3d Cir. 1996).

Plaintiffs must also show a causal link between the alleged custom or policy and the alleged §1983 violation and concomitant harm. In short, "a municipality can be liable under §1983 only where its policies are the 'moving force behind the violation.'" *City of Canton v. Harris*, 489 U.S. 379, 386 (1989) (quoting *Monell*, 436 U.S. at 694).

The Third Circuit has long held that "a failure to train, discipline or control can only form the basis for §1983 municipal liability if a plaintiff can show both contemporaneous knowledge of the offending incident, or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. DeSimone,* 159 F.3d 120, 127 (3d Cir.

1998); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir., 1997); *Freedman v. City of Allentown*, 853 F.2d 1111, 1117 (3d Cir., 1988). More specifically, a plaintiff "must show that a 'reasonable municipal policymaker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question.'" *Cacciatore v. City of Philadelphia*, 2005 U.S. Dist. LEXIS 19064, *1, *6 (E.D. Pa., Sept. 1, 2005) (quoting, *Garcia v. County of Bucks*, 155 F. Supp. 2nd 259, 268 (E.D. Pa., 2001)); *Strauss v. Walsh*, 2002 U.S. Dist. Lexis 24717, *1, *10 (E.D. Pa. Dec. 18, 2002); *Altieri v. Pennsylvania State Police,* 2000 U.S. Dist. Lexis 5041, *1, *39-40 (E.D. Pa., April 20, 2000).

In *Hellmann v. Kercher*, 2009 U.S. Dist. LEXIS 17279, this Honorable Court reviewed the commonly proffered theories of municipal liability such as alleged unlawful municipal policies or customs, failure to train and failure to supervise. The Court concluded that a plaintiff's failure to support said allegations with evidence of prior incidents warrants summary judgment in favor of the municipality. A failure to train claim based on an allegation that the municipality failed to prevent the acts complained of is not sustainable because the issue is not whether training was inadequate, but rather whether municipal defendants were aware of similar misconduct in the past and subsequently failed to take precautions against future violations. *Id., p. 23-25 ,citing Bielevicz, Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990) and *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d. Cir. 1996).

In this case, as in *Hellmann,* Plaintiffs have no evidence that McKeesport decisionmakers were aware of similar misconduct of the officers involved in this incident but failed to take precautions against future violations. Accordingly, based upon the well-established parameters for municipal liability, it is clear that the City of McKeesport must be dismissed from this lawsuit.

**D.    CHIEF PERO MUST BE DISMISSED WITH PREJUDICE BECAUSE NO SUPERVISORY LIABILITY EXISTS.**

Plaintiff claims that the actions/inactions of Chief Pero amount to supervisory liability as a matter of law.  It is well established that 42 U.S.C §1983 does not permit the imposition of liability upon a supervisory official, or municipality, for the conduct of a subordinate based solely on respondeat superior.  *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978).  It is similarly well settled that if there is no constitutional violation in the first place, there can be no claim of supervisory liability.  *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Plaintiff cannot establish any conduct by Chief Pero that could be said to have violated her or her son's constitutional rights.  A defendant can only be held liable if they know the subordinate's actions violated a plaintiff's constitutional rights, or they themselves violated the Plaintiff's rights.  *St. Louis v. Paprotnik*, 45 U.S. 112 (1988), "[T]his necessary involvement can be established in either of two ways:  through allegations of personal direction or actual knowledge and acquiescence with proof of direct [violation] by the supervisor." *Kis v. County of Schuylkill*, 866  F.Supp. 1462, 1474 (E.D. Pa. 1994); *See also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The *Kis* Court explained that "[t]o hold a supervisory official liable, the Plaintiff must: 1) identify with particularly what the supervisory official failed to do that demonstrates deliberate indifference; and 2) demonstrate a causal relationship between the identified deficiency and the ultimate constitutional injury." Id. at 1474.  *See also, Sample v. Deicks*, 855 F.2d 1099, 1118 (3d. Cir. 1989).

Plaintiff has neither established a constitutional injury, nor action by a supervisor that would amount to liability.  Plaintiff has no evidence that Chief Pero had any personal interaction on May 26 or the early morning hours of May 27, 2006 with the Plaintiff or her son.  Furthermore, she has no evidence that Chief Pero directed any of the individual defendants regarding their arrests of the

Plaintiff or her son. It is anticipated that Plaintiff will argue that Chief Pero's alleged response to her complaint regarding the events of May 26, 2006 subject him to liability; however, no causation exists. *See, Amended Complaint, ¶26.* Plaintiff also alleges that Chief Pero is liable for a constitutional violation for "participating in, having personal direction of, and knowledge of and acquiescence or ratifying the conduct by failing to take any disciplinary action with respect to the conduct of Officer Tyler and Lt. Lynn" following the alleged events of May 26, 2006. *See, Amended Complaint, ¶3.* These alleged violations by Chief Pero occurred after the purported constitutional violations and are not recoverable because Plaintiff cannot establish that his alleged actions/inactions caused her or her son's constitutional violations. Plaintiff's claim for supervisory liability should, therefore, be dismissed with prejudice.

### E.     THE SECTION 1985(3) CONSPIRACY CLAIMS MUST BE DISMISSED BECAUSE NO EVIDENCE OF CONSPIRACY EXISTS.

To establish a claim of conspiracy to deprive civil rights under 42 U.S.C. § 1985, A plaintiff must prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Broth. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 829-30, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) (emphasis added) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)). In addition, the conspiracy "must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffin*, 403 U.S. at 102).

In the present case, Ms. Jackson cannot prove that a conspiracy even existed let alone that it was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory

animus behind the conspirators' action.'" *Id.* (quoting *Griffin*, 403 U.S. at 102). She cannot produce any evidence that the alleged actions of Tyler, Rich, Lynn or Pero were based upon her race.[1] She cannot produce any evidence that the individual defendants had an agreement to deprive her of her constitutional rights simply because she and her son are Caucasian. More importantly, Plaintiff has alleged that only Officer Tyler used racial slurs. A conspiracy cannot exist of one participant. Therefore, Plaintiff's and her son's conspiracy claims must be dismissed with prejudice.

## F.   THE 14TH AMENDMENT DUE PROCESS CLAIMS MUST BE DISMISSED

Plaintiff brings civil rights claims under both the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. §1983. The Fourth Amendment is, of course, made applicable to the states by the Fourteenth Amendment. *See e.g., Albright v. Oliver*, 510 S.S. 266, 272-73 (1994) citing *Mapp v. Ohio*, 367 U.S. 643 (1961). However, to the extent Plaintiff is attempting to assert a substantive due process claim under the Fourteenth Amendment, it is subsumed by her Fourth Amendment claim. *See Graham v. Connor*, 490 U.S. 386, 388 (1989)(claim that police used excessive force while making arrest is properly analyzed under Fourth Amendments objective reasonableness standard, rather than Fourteenth Amendment due process standard); *Chatman v. City of Johnstown*, 2005 W.L. 1127125, *1 (3d. Cir. 2005)(district court properly ruled that Fourteenth Amendment did not provide basis for claim that arrest was made with excessive force). An equal protection claim fails as a matter of law because nothing in the Amended Complaint suggests that Plaintiff or her son were treated differently from other individuals, similarly situated, on account of his membership in a protected class, or even that Plaintiff is a member of a protected class. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Furthermore, the other individuals who were arrested that night (Lance Odorsik, William Haley, Sr., William Haley Jr. and Wayne

---

[1] Rich, Lynn, and Pero are Caucasian.

Crowl) are all Caucasian. Therefore, Plaintiff's Fourteenth Amendment claims should be dismissed with prejudice.

### G.     LT. LYNN AND OFFICER RICH WERE IMPROPERLY JOINED AFTER THE STATUTE OF LIMITATIONS AND THEREFORE, MUST BE DISMISSED.

Statutes of limitations ensure that defendants are 'protected against the prejudice of having to defend against stale claims, as well as the notion that, at some point, claims should be laid to rest so that security and stability can be restored to human affairs.' *Cunningham v. Insurance Co. of N. America*, 530 A.2d 407, 409 (Pa. 1987)(citations omitted). In order to preserve this protection, the relation-back rule requires plaintiffs to show that the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights. *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995). The relation back of Amendments is governed by Federal Rule of Civil Procedure 15(c). Rule 15(c)(1)(C) allows amended complaints that add new parties, but all three requirements of 15(c)(1)(C) must be satisfied in order for the amended complaint to relate back to the original complaint and not be time barred. *See, Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 189 (3d Cir. 2001). This Court permitted Lt. Lynn and Officer Rich to be joined as defendants subsequent to the expiration of the statute of limitations. In an effort to preserve this issue for appeal, Defendants incorporate their Memorandum in Response to Plaintiff's Motion to Amend Complaint as if fully set forth herein. *See, Memorandum of Law in Opposition to Motion to Amend Complaint attached to Appendix as Exhibit "* Additionally, based upon the deposition testimony which was provided by Officer Rich and Lt. Lynn, particularly where Officer Rich confirmed that he had no reason to believe there was a complaint against him, these Defendants supplement their

arguments contained in the Memorandum of Law in Opposition to the Motion to Amend Complaint regarding Rule 15(c)(1)(C)(i).

     **1.**    **Plaintiff's Amended Complaint fails to meet the requirement of Fed.R.Civ.P. 15(c)(1)(C)(i) because the proposed new parties did not have such notice of the action within 120 days of the filing of the original complaint that they will not be prejudiced in defending on the merits.**

Rule 15(c)(1)(C)(i) requires notice to the nonmoving party and an absence of prejudice to the nonmoving party in order for an amended complaint to relate back to the original complaint. *See Singletary*, 266 F.3d at 194 (*citing Urrutia,* 91 F.3d at 458). Prejudice is closely intertwined with notice because 'the amount of prejudice a defendant suffers under [15(c)(1)(C)(i)] is a direct effect of the type of notice he receives.' *Id.* at 194. n.3. The Third Circuit has interpreted the second condition as imposing two requirements, notice and absence of prejudice, each of which must be satisfied. *Fields v. Blake*, 349 F.Supp.2d 910, 917 (E.D. Pa. 2004).

Case law addressing the issue of the meaning of 'notice' in the context of Rule 15(c)(1)(C)(i) instructs that notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means. *See Singletary*, 266 F.3d at 195.

     **a**.   **Actual Notice**

Notice must be received within the period provided by Rule 4(m) for serving the summons and complaint, which is 120 days. In this matter, the original Complaint was filed on May 27, 2008, and the expiration of the 120-day period occurred on September 25, 2008. It was not until February 20, 2009 that Plaintiff expressed her intent to add any other party. Prior to that time, there

was no notice that Lynn or Rich would be defendants in this case. The Complaint was tailored to the actions of Tyler. Clearly, the 120 days had expired.

### b. Prejudice

Generally, there is a dearth of case law addressing the issue of the prejudice aspect of Rule 15(c)(1)(C)(i). In some instances, courts have declined to address prejudice where the notice element has not been met. *See, e.g., Singletary,* 266 F.3d at 194. However, the *Singletary* Court attempted to discuss the issue in a footnote, commenting:

> Prejudice and notice are closely intertwined in the context of Rule [15(c)(1)(C)], as the amount of prejudice a defendant suffers under [15(c)(1)(C)] is a direct effect of the type of notice he receives'. That is, once it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether that notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint. If the newly named defendant received no notice, then it would appear unlikely that such non-notice was sufficient to allay the prejudice.

266 F.3d at 194 n.3 (citations omitted). Based on *Singletary*, it appears that where the notice element is not met, it is unlikely, if not impossible, that a plaintiff will be able to show an absence of prejudice.

### 2. There is no evidence that Lynn or Rich knew or should have known, within 120 days of the institution of the action, that but for a mistake concerning the identities of the proper parties, they would have been named in the original complaint.

The final requirement of Federal Rule of Civil Procedure 15(c), set forth in 15(c)(1)(C)(ii), is that within the time period provided by Federal Rule of Civil Procedure 4(m), the party to be brought in by the amendment 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.' *See* FED. R. CIV. P. 15(c)(1)(C)(ii). Although recognizing that a majority of courts have held that only a 'misnomer or misidentification' of an existing party constitutes a 'mistake concerning the proper party's identity',

the Third Circuit, in *Arthur v. Maersk, Inc.*, broadened the definition of 'mistake' to include a lack of knowledge. *See* 434 F.3d at 208. The *Arthur* Court reasoned:

> A 'mistake' is no less a 'mistake' when it flows from lack of knowledge as opposed to inaccurate description. Both errors render the plaintiff unable to identify the potentially liable party and unable to name that party in the original complaint. Thus, both errors constitute a 'mistake concerning the identity of the proper party' for purposes of Rule [15(c)(1)(C)(ii)]. *See id.* (citations omitted).

Even if Plaintiff had a cognizable lack of knowledge of the identify of the potential defendant at the time the original Complaint was filed, this alone is not enough to satisfy the requirements of Rule 15(c)(1)(C)(ii). Plaintiff must also prove the second prong of this provision, that Lynn and Rich 'knew or should have known' that the action would have been brought against them if Plaintiff had not lacked knowledge. The mistake requirement 'is intended to insure that the new defendant knew or should have known that failure to join was not simply a legal strategy, but that his joinder was a distinct possibility.' *Fields v. Blake*, 349 F.Supp.2d 910, 918 (E.D. Pa. 2004), *citing Trant v. Towamencin Township*, 1999 WL 317032, at *21 (E.D. Pa. 1999). 'The mistake condition ... is concerned fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy.' *Id.*, *citing Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F.Supp. 1450, 1457 (E.D. Pa. 1992). Therefore, in assessing whether Lynn and Rick knew or should have known that the action would have been brought against them but for a mistake, the inquiry must focus on the proposed defendant's awareness that the failure to join them was error.

In reviewing case law related to a defendant's awareness as to whether a suit should have been brought against him, we first turn to *Fields v. Blake*, in which the plaintiff originally named Captain Blake, and later sought to add Petty Officer Clark as a defendant. *See* 349 F.Supp.2d 910. The *Fields* Court held that Petty Officer Clark should have known that but for an error in legal judgment, he would have been named in the Complaint. *See id.* at 919. The court noted that 'the

text of the Complaint described conduct attributable to [Petty Officer Clark]', and that 'the declaration provided by Petty Officer Clark on August 8, 2003, describing his personal involvement in the event about which [the plaintiff] complained, 'shows his recognition that the suit should have been brought against him.' *Id. Eakins v. Reed*, 710 F.2d 184, 188 (4th Cir. 1983).

Further, in *Stewart v. Philadelphia Housing Authority*, the court found that PHA should have recognized that the plaintiff's failure to name PHA was simply a mistake given the close relationship between PHA and the individual defendants, who were employees of PHA in supervisory capacities. *See* 487 F.Supp.2d at 589, 590-91. Similarly, in *Arthur v. Maersk*, where a seaman plaintiff brought an action against private companies contracting with the United States, and later sought to add the United States as a defendant, the court found that the only reason the plaintiff did not bring his claims against the United States was because the plaintiff did not recognize the agency relationship between the companies and the Navy. *See* 434 F.3d at 209. Thus, the court held that the United States should have known that it would have been named but for a mistake, particularly due to litigation provisions contained in the operational contracts between the United States and the private companies, and because the court found 'no basis to characterize [the plaintiff's] decision to sue his statutorily immune employers as litigation strategy.' *Id.*

The instant matter can be distinguished from the circumstances set forth in *Fields*, *Stewart*, and *Arthur*. Unlike *Fields*, the original Complaint in this case is completely devoid of descriptions of conduct attributable to Lynn or Rich. Rather, because the original Complaint focused on the strictly Officer Tyler's alleged conduct and merely states that Quinn Jackson was detained and released with no charges, neither Lynn nor Rich could have recognized that the suit 'should have' been brought against them. At no time did Officer Rich believe that Linda or Quinn Jackson had

any complaint against him. *See, Depo. Transcript of Officer Rich, pp. 143-144 attached to Appendix as Exhibit "L."* At no time did Officer Rich have any reason to believe that Linda or Quinn Jackson intended to file a lawsuit against him. *See, Depo. Transcript of Officer Rich, p. 144 attached to Appendix as Exhibit "L."* Until the date that Lt. Lynn was joined in this lawsuit, he never had any reason to believe that Linda Jackson had any complaint against him. *See, Depo. Transcript of Lt. Lynn, p. 103 attached to Appendix as Exhibit "M."* Each time a lawsuit is filed against one officer who responds to the scene, the remainder of the officers who respond cannot automatically be on notice that they might be named as defendants in a lawsuit initially only claiming that one officer engaged in wrongdoing. This type of analysis would only serve to encourage Plaintiffs to conduct haphazard initial investigations prior to filing a complaint and conduct fishing expeditions because they could later rely upon the fact that they could add as parties any individual who during discovery was potentially involved. This would undoubtedly result in prejudice to those later added parties. Therefore, there is no evidence that Rich or Lynn knew that they should have been parties to the suit within 120 of its filing (i.e. September 24, 2008) and Plaintiff cannot meet the 'knew or should have known' requirement of Rule 15(c)(1)(C)(ii). Therefore, all claims against Rich and Lynn must be dismissed with prejudice.

### H. CLAIMS FOR PUNITIVE DAMAGES AGAINST THE CITY AND THE OFFICERS IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED.

The Supreme Court has held that punitive damages may not be recovered against a governmental entity in an action brought under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). "Similarly, to the extent that Plaintiff[s] seek punitive damages against Defendant[s] in [their] official capacity[ies] only, such punitive damages claim[s] [are] barred, just as it is barred against the Borough." *Mitros v. Borough of Glenolden,* 170 F.Supp.2d 504, 508 (E.D. Pa. 2001).

**I.** **THE CLAIMS AGAINST TYLER, RICH, LYNN AND PERO IN THEIR RESPECTIVE OFFICIAL CAPACITIES MUST BE DISMISSED.**

Plaintiff avers claims against Chief of Police Pero, Officer Tyler, Lieutenant Lynn and Officer Rich in their official capacities. Suits against public officials are essential, actions against the entity of which the official is an officer or agent. Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. *Brandon v. Holt*, 469 U.S. 464, 469-470, 471,-472 N.21 (1985). Therefore, regardless of the outcome of the Motion as it pertains to the City, Chief Pero, Officer Tyler, Lt. Lynn, and Officer Rich should be dismissed from this matter in their official capacity as Plaintiff's claims are entirely redundant of the claims brought against the City. *Kentucky v. Graham*, 473 U.S. 159 (1985).

**J.** **THE CLAIM THAT QUINN JACKSON WAS BEING QUESTIONED WITHOUT A GUARDIAN PRESENT IS NOT ACTIONABLE PURSUANT TO SECTION 1983 AND MUST BE DISMISSED.**

Plaintiff appears to aver that the Defendants violated hers and/or her son's constitutional rights by allegedly questioning him about a recent murder without a guardian present. In order to establish a §1983 action, a plaintiff must show that a "person" acted under color of state law to cause a deprivation of a legally protected liberty or property interest protected by the United States Constitution. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). A minor being questioned without a guardian present does not constitute a deprivation of a legally protected liberty or property interest protected by the Constitution and therefore, cannot be a constitutional violation. Quinn Jackson does not allege that any statements were used against him in any manner. Furthermore, documentation establishes that Ms. Jackson was informed that Quinn gave a statement to the police. Moreover, the documentation establishes that Quinn voluntarily made the statement regarding the murder. *See, Police Report 20060520M5989 attached to Appendix as Exhibit "K."* Accordingly, Plaintiff's claim

on her behalf and her son's that the alleged questioning of him without a guardian present is a constitutional violation must be dismissed with prejudice.

### K. THE CLAIM THAT ARRESTEES WERE TAKEN INTO CUSTODY FOR SUMMARY OFFENSES IS NOT ACTIONABLE

Plaintiff appears to aver that the Defendants violated hers and/or her son's constitutional rights by taking them into custody for summary offenses. Plaintiff will presumably argue the arrests were violative of the Pennsylvania Rules of Criminal Procedure. Defendants do not agree. Nevertheless, this claim is not actionable even if Plaintiff were correct because a violation of state law does not constitute a violation of §1983. Section 1983 does not provide a cause of action for violation of state statutes. A state statute does not, in of itself, create a constitutional right. *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3rd Cir. 1990). Section 1983 is not a remedy for common law torts, rather, it is only a violation of federal constitutional rights which may be redressed. *Morrison v. Fox*, 483 F.Supp. 390, 395 (W.D. Pa. 1979). Violations of state law, such as defamation, do not state a claim under §1983. *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3rd Cir. 1992). *See, Elkin v. Fauver*, 969 F.2d 48, 52 (3rd Cir. 1992) and *Collins v. City of Harker Hts*, 112 S.Ct. 1061, 1065 (1992) (§1983 "does not provide a remedy for abuses that do not violate federal law.").

The United States Supreme Court has definitively held that a police officer may arrest an offender if he has probable cause to believe that the offender has committed "even a very minor criminal offense in his presence." *Atwater v. City of Lego Vista*, 121 S.Ct. 1536, at 1557. In that case, Atwater had argued that her arrest without a warrant and subsequent incarceration for a misdemeanor seatbelt offense was unlawful. She alleged that the Fourth Amendment did not permit a warrantless arrest for a minor criminal offense. The Supreme Court rejected her argument and affirmed that the standard of probable cause applied to all arrests.

Accordingly, Ms. Jackson and Quinn Jackson's arrests were not violative of any of their constitutional rights. Taking an arrestee into custody on a summary offense does not constitute a deprivation of a legally protected liberty or property interest protected by the Constitution.

**L.     TYLER, RICH AND LYNN ARE ENTITLED TO QUALIFIED IMMUNITY.**

As the Court recently recognized:

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting and citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability . . . .'" *Pearson,* 129 S.Ct. at 815 (quoting and citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

"The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

The Third Circuit Court of Appeals has explained the procedure for qualified immunity analysis as follows:

> To determine whether [qualified] immunity applies, we engage in a multi-step inquiry. "First, we must ask whether the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law. If so, then we go on to ask whether the unlawfulness of the action would have been apparent to an objectively reasonable official." *Showers v. Spangler*, 182 F.3d 165, 171-172 (3d Cir. 1999) (internal citation omitted); see also *Rouse v. Plantier, 182 F.3d 192, 196-197 (3d Cir. 1999) . . . .*

*Walter v. Pike County,* 544 F.3d 182, 191 (3d Cir. 2008).

The Supreme Court recently overruled the mandatory qualified immunity procedure of *Saucier v. Katz*, 533 U.S. 194 (2001), whereby a court was required to determine whether a constitutional violation had been committed before turning to the question whether the defendant

violated clearly established law: "On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

In the present case, Officers Tyler and Rich and Lieutenant Lynn are entitled to qualified immunity on the Section 1983 false arrest claims. As described in the Statement of Facts and in Argument A and B of this Memorandum, not only did Ms. Jackson plead guilty to disorderly conduct, but probable cause existed to charge her with public intoxication and to charge Quinn with disorderly conduct. Importantly, Plaintiff cannot produce any evidence to dispute that probable cause did exist for the charges. Therefore, the claims against Tyler, Rich, Lynn and Pero must be dismissed with prejudice.

### M. BECAUSE NO EVIDENCE HAS BEEN OFFERED THAT EXCESSIVE FORCE WAS USED ON QUINN JACKSON, ALL SUCH CLAIMS MUST BE DISMISSED WITH PREJUDICE.

Plaintiff alleges that Quinn Jackson was subjected to excessive force by Pero, Tyler and Rich. However, Plaintiff cannot come forward with any testimony identifying any of the Defendants as an individual who used any force upon Quinn. Plaintiff may attempt to argue that Tyler did when Quinn felt the effects of the pepper spray that she used on Ms. Jackson; however, Quinn testified that he did not believe that Officer Tyler intended to spray him with the pepper spray. Moreover, he is unable to identify who arrested him. *See, Depo. Tr. of Quinn Jackson, pp. 18-23 attached to Appendix as Exhibit "C."* It is undisputed that McKeesport police were not the only officers at the scene. Because Plaintiff cannot come forward with any evidence that any of the Defendants used excessive force upon him, the claims brought on behalf of Quinn for excessive use of force under the Fourth Amendment must be dismissed with prejudice.

**N. ALL CLAIMS AGAINST OFFICER RICH MUST BE DISMISSED.**

Plaintiff alleges that Officer Rich violated Quinn's Fourth Amendment rights based upon arguments for false arrest, unreasonable seizure and excessive use of force. *See, Amended Complaint Count III.* The only evidence that Plaintiff can come forward with to implicate Rich is that he signed Quinn's citation; however, Quinn's false arrest claim has been addressed above. Plaintiff cannot prove that Rich used excessive force upon Quinn as argued above. Furthermore, Ms. Jackson cannot produce any evidence that Rich falsely arrested her or used excessive force upon her, nor is it alleged in the Amended Complaint. Therefore, all claims against Officer Rich must be dismissed with prejudice.

**IV. CONCLUSION**

Based upon the above arguments, the claims addressed against Defendants must be dismissed with prejudice.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**

By:     s/Patricia A. Monahan
        Patricia A. Monahan, Esquire
        PA I.D. #58784
        Danielle M. Vugrinovich, Esquire
        PA I.D. #88326
        US Steel Tower, Suite 2900
        600 Grant Street
        Pittsburgh, PA  15219
        (412) 803-1151
        (412) 803-1188
        pamonahan@mdwcg.com
        dmvugrinovich@mdwcg.com
        **Attorneys for Defendants,
        City of McKeesport, Joseph Pero,
        Candace Tyler, Glenn Lynn and
        Daniel Rich**